JAMES V. WAGNER AND E. A. MARSHALL *vs.* MENDEZ I. COHEN.—*December*, 1847.

After decree for a sale of real property, a sale reported by the trustee, and exceptions filed to its ratification still pending, a party interested in the proceeds of sale applied to the Chancellor for an injunction, on the ground that the reported purchaser, without the sanction of the court or those interested, had assumed the power to rent the property—and that it was about to be used by his lessee. The object of the injunction was to restrain such use. *Held*, that as it was not alleged that the property was subject to waste in the hands of the purchaser, or his lessee, or that its preservation was endangered by the disposition which the reported purchaser had made of it—the injunction should not have been granted.

Upon an appeal under the act of 1835, ch. 380, from the granting of an injunction only, this court is confined to the case made by the bill or petition. It does not examine the answer.

The necessity of filing an answer is imposed upon the defendant, as one of the conditions on which his right to appeal depends. The object of the act, in such requisition, was to prevent delay.

A contract of sale, made between the court as the vendor of property, through the agency of a trustee, and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the court.

If the purchaser has not assumed the responsibility of protecting the property, by taking possession of it, any loss that may be sustained by its injury or deterioration in the interval between the sale and final ratification, falls upon the vendor. Still it gives to the purchaser an inchoate and equitable title, which becomes complete by the ratification of the court.

A ratification retroacts, and the purchaser is regarded, by relation, as the owner from the period of sale. He is entitled to the intermediate rents and profits; cannot escape from the sale, because disadvantageous, and is bound to pay interest on the purchase money from its date.

Possession obtained by a purchaser from a trustee acting under a decree, though before ratification, is not unlawful.

Where a sale under a decree is vacated, the purchaser, having been let into possession by the trustee, and enjoyed the use, is responsible for rents and profits.

A party interested in the proceeds of property decreed to be sold, although his right in the property is merged in the decree, retains such an interest as will enable him to apply to the court, which rendered the decree, to protect and preserve the estate from injury and waste.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 28th May, 1839, for the sale of the *Holliday Street Theatre*, in the City of *Balti-*

*more.* A decree was passed for its sale, and the trustee reported, that on the 20th June, 1846, at the *Exchange*, in the City of *Baltimore*, and at one o'clock, P. M., he sold said property to *James V. Wagner*, the highest bidder therefor, at the sum of $13,000, according to notice, &c.

The Chancellor passed the usual order for a confirmation *nisi*, &c., the 22d August, 1846.

On the 22d July, 1846, the appellee filed his exceptions to the ratification of the sale made by the trustee, which the trustee answered, denying the grounds thereof.

On the 9th September, 1846, *Mendez I. Cohen* filed his petition, alleging that on the 22d July, he filed certain exceptions to the final ratification of the report of *J. H. B. Latrobe, Esq.*, trustee in this cause, and upon the filing of which petition, &c. on the 23d July, 1846, an order was passed that the said exceptions should stand for hearing on the 22d September, then next ensuing. He further states that a copy of said order and said exceptions was duly served, according to the exigency of the said order, as by the admission of service will appear; that the said exceptions are yet pending and undecided; and that your petitioner has given notice of his intention to take evidence in support of the same, commencing on Thursday morning next; that on the evening of Monday, the 7th *September*, instant, according to previous announcement by handbills, and by advertisement in the *Baltimore* newspapers, the Theatre, in the said proceedings mentioned, was opened and a theatrical performance was had, under the authority and management of a certain *E. A. Marshall*, as professed lessee thereof; and your petitioner herewith exhibits, as a part of this petition, a copy of the advertisement of said performances; that upon diligent enquiry, he is satisfied that said *Marshall* claims to be lessee, in virtue of a contract and agreement, made by or on behalf of *James V. Wagner*, who is reported as the purchaser of said Theatre in the aforesaid report of said trustee—and to the ratification of which said sale, objection was made by the aforesaid exceptions, filed by your now petitioner. He therefore alleges

and charges, that said *Wagner* (or some agent of his assuming to act on his behalf, and whose act he has adopted,) has taken upon himself, pending the said exceptions, and without any application to the Court of Chancery for its sanction thereof, to rent said property, as if the said reported sale were ratified and confirmed, or as if he were the owner and actual proprietor of said property, thereby wholly disregarding the said exceptions, which were set down for hearing on the 22d September.

Your petitioner further states, that he is the owner of thirty-six shares of the stock, and as such, largely interested in the proceeds of the sale of said property; that said contract with said *Marshall*, was made without any conference, as far as he knows, with any of the stockholders—and certainly without conference with any number of the stockholders, and with no one, as he verily believes, in the capacity of a stockholder; and he is advised and respectfully insists, that pending said exceptions, and until it shall be decided whether or not the said reported sale shall stand, the said property is under the control of this court, and cannot lawfully be leased by any one, without its previous sanction. Your petitioner, on the foundation of his interest, objects to the leasing of said property, by or to any one, unless under the sanction of this court, and on such terms as may seem meet; and he exhibits this petition on behalf of himself, and of all other stockholders, and of other persons interested in the proceeds of the final sale, who shall come in and contribute to the expense of this suit.

Prayer for injunction to the said *James V. Wagner* and to said *E. A. Marshall*, commanding them, and each of them, to abstain from using said Theatre for theatrical performances or otherwise, by themselves or others, pending the questions which arise on the said exceptions, and to direct the manner in which notice shall be given to the said *James V. Wagner* and said *E. A. Marshall*, of the nature and object of this petition, &c.

The Chancellor (BLAND) ordered an injunction, as prayed.

This petition was answered by the appellants, who thereupon appealed to this court, from the order granting the injunction.

The cause was argued at December term, 1846, before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By GLENN, JOHNSON and McMAHON for the appellants, and

By McLEAN and WILLIAM SCHLEY for the appellees.

MARTIN, J., delivered the opinion of this court.

It appears from the record in this case, that a decree was passed by the Chancellor on the 29th of May, 1839, for the sale of the premises on which is erected the *Holliday Street Theatre*, in *Baltimore*, and a trustee appointed to make the sale. On the 22d of June, 1846, the trustee reported that he had sold the property on the 20th of June, 1846, to *J. V. Wagner*, the appellant; and on the day on which this report was returned, an order *nisi* for its ratification was passed, limiting the time within which cause against its confirmation was to be shown to the 22d of August, 1846. Exceptions to the ratification of this sale were exhibited by the appellee, on the 22d of July, 1846, and were ordered to stand for hearing on the 22d of September, 1846. The trustee put in his answer to these exceptions on the 31st of July, and on the 9th of September, 1846, an order was obtained, authorizing the parties to take testimony in relation to this disputed sale.

On the 9th of September, 1846, the appellee filed his petition, in which, after stating the pendency of the exceptions, he alleges, that theatrical performances had been advertised to take place in the Theatre, by *E. A. Marshall*, who claimed to be the lessee of the appellant, *Wagner*, and charges that the appellant had assumed, pending the exceptions, and without the sanction of the court, to rent the property to *Marshall*. The petition, then, after averring the appellee's interest in the property sold and its proceeds, as a stockholder, and that the lease to *Marshall* was made without the concurrence of any of

the stockholders, prays that an injunction may be granted, restraining *Wagner* and *Marshall* from using the Theatre for theatrical or other purposes, until the exceptions are decided.

On the 9th of September, 1846, an injunction was granted, in conformity with the prayer of the petition, and the answer of the appellants having been filed on the 12th of September, an appeal was taken from the order of the Chancellor to this court.

As the appeal in this case has been taken by the appellants, in conformity with the provisions of the Act of Assembly, of 1835, ch. 380, the first question presented for our consideration, is, whether, in revising the order of the Chancellor, we are confined to the case as made by the petition? or, are at liberty to examine the answer which was filed by the appellants, as preliminary to their right of appeal?

The third section of the Act of Assembly provides: " That where any injunction shall issue from the Court of Chancery, or any county court, as a court of equity, the defendant may appeal, the answer of such appellant being first filed, from the order of the Chancellor, granting the injunction or refusing to dissolve it, to the Court of Appeals of the Shore where such injunction shall have issued, and the said court, at the first term to which the case shall be transmitted, shall determine the said appeal, and shall pass such order in the premises as to it may seem right."

In the case of the *Union Bank vs. Poultney & Ellicott*, 8 *G. & J.* 324, an appeal was taken by the *Union Bank* from an order of the Chancellor, granting an injunction, under the third section of the act, to which we have adverted. The answer of the appellant having been filed, it was contended by his counsel, that it was the duty of the court to examine it. But the Court of Appeals placed their decision upon the allegations of the bill alone, without referring to the answer, and, although the question was not directly determined, the implication from the opinion of the court is, that they considered the bill as the only paper in the cause which they were authorized to examine. This is, we think, the correct view of the power of

the court, when acting upon a case brought before it, by an appeal under the provisions of the act of 1835, ch. 380. It must be apparent, that if this court, in reviewing the order passed by the Chancellor, and pronouncing upon its correctness, was influenced by a paper not exhibited below, it would become practically engaged in the exercise of original jurisdiction. The legislature intended to confer upon the court no such power, and the necessity of filing an answer was imposed upon the defendant, as one of the conditions on which his right of appeal depended, solely for the purpose of preventing unnecessary delay.

Putting aside then the answer of the appellants, as a paper to which the court cannot look in reviewing the order of the Chancellor, we turn to the petition, for the purpose of inquiring if a proper case was presented for the application of the writ of injunction.

It is certainly true that a contract of sale made between the court as the vendor of the property, through the agency of a trustee, and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the court. And, therefore, if the purchaser has not assumed the responsibility of protecting the property, by taking possession of it, any loss that may be sustained by its injury or deterioration, in the interval between the sale and the final ratification, falls upon the vendor. In the case of *ex parte Minor*, 11 *Ves.* 559, it was determined: " That a purchase before the master, is not complete before confirmation of the report. Therefore, a loss by fire after the report, but, before confirmation, falls upon the vendor."

Although this is the character of the imperfect right acquired by a purchaser at a sale of this kind; yet, it gives to him, an inchoate and equitable title which becomes complete by the ratification of the court. When this is accomplished, the ratification retroacts, and he is regarded by relation as the owner from the period of the sale. He is as such proprietor entitled to the intermediate rents and profits of the estate; he cannot escape from the sale, because, he may believe it to be disad-

vantageous, and is bound to pay interest on the purchase money from its date; and has, therefore, a direct and strong interest in protecting the property from injury, and rendering it as productive as possible.

The petition is silent as to the mode in which this property was acquired by *Wagner*, the appellant; but the legitimate inference is, that he was placed there by the trustee; and, we think, a possession thus obtained with the consent of the trustee, as the agent of the court, cannot be characterized as unlawful. We can perceive no reason why possession should be withheld from a purchaser who had complied with the terms of sale, who has a large stake in the preservation of the property, and who is justly entitled to its use as an equivalent for the interest which he pays on the purchase money. It is to be remarked, that the appellee does not attempt to disturb the appellant in his possession of this property; but seeks only to restrain him from using it as a Theatre, or, for any other purpose. This is the act of which the petitioner complains, and which he endeavored to redress by the interposition of the court. He has placed his case upon the single ground, that *Wagner* has assumed the control and direction of the property, as if it was his own, pending the controversy in relation to these exceptions.

We have already said, that by a decree for the sale of this property, it vested in the Court of Chancery, and was held for the benefit of those interested in the sale, and in the distribution of the fund. It was the unquestioned duty of the court, as the proprietor of this property, on the application of any of the parties interested, to have adopted such measures as might be necessary for its preservation in the interval between the sale and the action of the court in reference to the question of final ratification; and to have devoted it during that period to some profitable purpose. This object, the court would have accomplished, by directing a temporary lease of the Theatre. And as this had already been done by the purchaser, who was interested in the preservation of the property, and in making it available, we can discover no reason for disturbing the lease;

and think, that the Chancellor in the exercise of a wise discretion, looking to the interests of those who were concerned in the proceeds of the property, should have refused the injunction. No injury could result to the creditors entitled to the fund, as upon the contingency of the sale being vacated, and the property re-sold, *Wagner* would have been clearly responsible in equity for its use and occupation.

The bill is instituted by the complainants for themselves, and such others as may come in and avail themselves of the proceedings, having claims of a like character, with those set forth in the bill against the property sought to be made liable; and although the right which the appellee, as a stockholder, held in this property was merged in the decree, he retained an interest in the proceeds of the sale, and was, of course, interested in the preservation of the estate, out of which the fund was to arise. We think, therefore, that the appellee occupied a position which entitled him to institute this proceeding; and if he had charged in his petition, that the property was subjected to waste in the hands of the appellants, as in *Casamajor vs. Strode,* 1 *Sim. St.* 381, or that its preservation was endangered by the disposition which *Wagner* had made of it, a case would have been presented authorizing the interposition of the Chancellor. No such allegation is, however, to be found in the petition, and the Chancellor erred, we think, in granting the injunction.

THE ORDER OF THE CHANCELLOR IS REVERSED, WITH COSTS, AND A DECREE WILL BE SIGNED DISMISSING THE PETITION.